### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

```
_____
                                       )
IN THE MATTER OF AN EX PARTE           )
APPLICATION FOR JUDICIAL ASSISTANCE    )
PURSUANT TO 28 U.S.C. § 1782, BY       )    No. 23-MC-91514
                                       )
THE ONTARIO SECURITIES COMMISSION      )
_____)
```

### MEMORANDUM AND ORDER

November 30, 2023

Saris, D.J.

### INTRODUCTION

The Ontario Securities Commission ("OSC") seeks to depose Rishi Gautam in a case pending before it. The OSC applied for and received a subpoena through the foreign judicial assistance statute, 28 U.S.C. § 1782. Mr. Gautam moves to quash the subpoena, arguing that forcing him to testify would violate his rights under the Fifth Amendment and Article 12 of the Massachusetts Declaration of Rights because he has a reasonable belief that the testimony sought may incriminate him in a possible future U.S. criminal proceeding. After review of the briefing and oral argument, the Court **DENIES** the Motion for the reasons set forth below.

### FACTS

Husband and wife David and Natasha Sharpe ran Bridging Finance, Inc., a Toronto-based private lender. The OSC alleges that the Sharpes engaged in a series of fraudulent transactions,

some of which were facilitated by Mr. Gautam. As alleged, the Sharpes sought to improperly borrow money from a fund they operated to pay for the acquisition of another business interest. In an effort to cover up their illegal self-dealing, they convinced Mr. Gautam to act as a middle man, using entities under his control to appear to borrow money from the Sharpe-controlled fund that would then be used to finance the acquisition. Even though the Sharpes' fund had signed loan agreements with the Gautam entities, no money was ever sent to or received by the Gautam entities. Instead, the money was used directly to complete the acquisition.

Mr. Gautam's transactions with the Sharpes drew the attention of the United States Securities and Exchange Commission ("SEC"), which sent him a letter informing him that they were investigating the transactions and requesting that he testify and produce documents. The SEC has indicated that they had closed that investigation.

Mr. Gautam has spoken to the OSC about the transactions in question on three separate occasions. The first interview, which he attended without counsel, was on October 9, 2020 and lasted over three hours. He sat for a second interview on October 15, 2020. On May 7, 2021, he sat for a third interview, this time compelled by a subpoena from the SEC pursuant to its authority under Section 21(a)(2) of the 1934 Securities and Exchange Act, which authorizes the SEC to assist foreign tribunals in their

investigations of financial crimes. In the last interview, Mr. Gautam was represented by both U.S. and Canadian attorneys. During none of these interviews did Mr. Gautam or his counsel raise any Fifth Amendment issues, though he did assert his right against self-incrimination under Canadian law.

The OSC has now initiated proceedings against the Sharpes, their entities, and one of the entity's executives before the Canadian Capital Markets Tribunal ("CMT"). In an effort to prepare evidence for that proceeding, the OSC applied to this Court for a subpoena requiring Mr. Gautam, a U.S. citizen and resident of Massachusetts, to appear for a deposition governed by Canadian law to take place via video in Massachusetts. Mr. Gautam filed an Motion to Quash the subpoena. <u>See</u> Dkt. 8. The Court stayed the subpoena until it could be more fully briefed on whether quashing the subpoena is necessary to protect Mr. Gautam's rights against self-incrimination.

To Mr. Gautam's knowledge, there is no U.S. criminal proceeding concerning these transactions initiated against him at this time.

## **DISCUSSION**

District courts are authorized to order discovery for use in foreign proceedings pursuant to 18 U.S.C. § 1782. Such orders are proper when: (1) the person from whom discovery is sought "resides or is found" in the district where the court sits; (2) the request

seeks evidence "for use in a proceeding in a foreign or international tribunal," (3) the request is made by an "interested person," and (4) the material sought is not protected by "any legally applicable privilege." See 28 U.S.C. § 1782(a). Mr. Gautam argues that the Court should quash the subpoena in this instance because his right against self-incrimination is a legally applicable privilege.

Both United States and Canadian law provide for a right against self-incrimination, but they do so in distinct ways. In the United States, the right is protected by the Fifth Amendment, which provides that no person "shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. Similarly, the Canadian Charter of Rights and Freedoms provides both that a person will "not to be compelled to be a witness in proceedings against that person in respect of the offence," Canadian Charter of Rights and Freedoms, Part I of the Constitution Act, 1982, being Schedule B to the Canada Act, 1982, c 11(c) (U.K.), and that a "witness who testifies in any proceedings has the right not to have any incriminating evidence so given used to incriminate that witness in any other proceedings, except in a prosecution for perjury or for the giving of contradictory evidence," id., c 13.

These different sources of the right have resulted in different methods of asserting the right. In the United States,

one typically invokes the right at the time testimony is compelled by "pleading the Fifth" instead of answering questions in depositions or in court. In Canada, a person's right against self-incrimination is evoked not when testimony is compelled, but when the government seeks to use the testimony against that person. See Hamish Stewart & Erica Bussey, The Privilege Against Self-Incrimination: Too Strong, Too Weak, or Both?, 9 Can. Crim. L. Rev. 369, 375 (2005) (discussing shift from common law to the approach embodied by the Canadian Charter of Rights and Freedoms, which does not allow a witness to refuse to answer questions). In other words, the Canadian Charter of Rights and Freedoms grants derivative use immunity over compelled testimony. See id. at 372 n.7.

These different methods of asserting the right create an apparent issue for Mr. Gautam. The subpoena requests that he be deposed "in accordance with the law of evidence and the practice and procedure of the province of Ontario." Dkt. 17 at 9. As the OSC acknowledges, "law of evidence and the practice and procedure of the province of Ontario" would require Mr. Gautam to answer the questions posed to him instead of pleading the Fifth. Any information he would provide would receive derivative use immunity and could not be used in a Canadian criminal proceeding against him. Mr. Gautam, though, lives in the United States and argues that he has a reasonable fear that providing the testimony required

by the subpoena would open him up to criminal prosecution in the United States.

Though the First Circuit has not addressed this issue, the Second Circuit has held that testimony compelled by a foreign sovereign cannot be used against a defendant in a U.S. court if it is given involuntarily. See Dkt. 17-13 at 108-111, British Columbia (Sec. Comm'n) v. Tak, 2021 B.C.S.C. 2283 (Can. B.C. Sup. Ct.) (collecting cases); see also United States v. Allen, 864 F.3d 63, 82 (2d Cir. 2017) (holding that compulsion by a foreign power implicates the Fifth Amendment "even when the testimony was compelled by a foreign government in full accordance with its own law"); United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008) ("When Miranda warnings are unnecessary, as in the case of an interrogation by foreign officials, we assess the voluntariness of a defendant's statements by asking whether the confession is the product of an essentially free and unconstrained choice by its maker. If it is, it may be used against him." (cleaned up)); Brulay v. United States, 383 F.2d 345, 349 n.5 (9th Cir. 1967) ("[I]f the statement is not voluntarily given, whether given to a United States or foreign officer[ ]-- the defendant has been compelled to be a witness against himself when the statement is admitted."); United States v. Mundt, 508 F.2d 904, 906 (10th Cir. 1974); Kilday v. United States, 481 F.2d 655, 656 (5th Cir. 1973).

As his efforts to quash the subpoena make plain, and as the parties agree, the testimony sought by the OSC at the hearing would be provided by Mr. Gautam involuntarily. Any use of that testimony by a U.S. court, state or federal, would therefore be unconstitutional. The subpoena therefore poses no threat to Mr. Gautam's Fifth Amendment rights.

In light of this ruling, the Court need not address OSC's alternative theory that any right was waived.

### **ORDER**

The Motion to Vacate and Quash (Dkt. 8) is **DENIED** and the stay (Dkt. 13) is **LIFTED**. The Order (Dkt. 4) is in effect.

SO ORDERED.

/s/ Patti B. Saris
Hon. Patti B. Saris
United States District Judge